THE STATE OF IOWA *ex rel.* DOX v. THE COUNTY JUDGE OF JOHNSON COUNTY *et al.*

1. PRACTICE: MOTION. A motion to amend and enlarge a peremptory writ of mandamus to conform to a judgment upon which it is based, should point out specifically the defects in the writ and the discrepancies between it and such judgment.

2. MANDAMUS: PEREMPTORY WRIT. The rule is, that a peremptory writ of mandamus must conform strictly to the alternative.

3. SAME: PRESUMPTION. Where the record in a proceeding in mandamus does not set out the alternative writ, the Supreme Court will presume that it was followed in the peremptory writ.

4. LEVY OF TAX. Under a proposition to issue bonds to assist in the construction of a railroad, which was submitted to, and adopted by the people, a tax not exceeding three mills on the dollar was to be levied during the first ten years, for the payment of interest, etc. It was held, that the rate could be reduced by the county when the maximum rate named would yield more than the amount to be paid in such year.

5. MANDAMUS: COLLECTION OF TAX. The relator being the owner of a judgment rendered against the county of which the respondents were officers, upon coupons attached to bonds issued by said county, filed his information for a mandamus on the 3d of May, 1859, and at the June Term of the District Court for the same year, an alternative writ of mandamus was issued, to which no return was made. At the same term a peremptory writ was ordered, commanding the respondents as the proper county officers to levy and collect a tax on the assessment of 1859, for the payment of the judgment. This writ was issued and returned on the 19th of March, 1860. It was served on the 24th of February, 1860, on which day the Board of Equalization, of which, respondents are the members, levied a tax in compliance with the com-

The State of Iowa ex rel. Dox v. The County Judge of Johnson Co. et al

mands of the writ, and directed the clerk to make a duplicate of such levy with all reasonable dispatch. In June 1860, the treasurer made a further return, showing that the books when prepared by the clerk were placed in hands of such treasurer; that he had attended his office every day for the purpose of receiving the taxes when tendered by the tax-payer; that he had given due notice to the tax payers of said levy, and urged the payment of the same; and that he could do nothing more, until after the 15th of January, 1861, when the taxes of 1860 became delinquent: *Held*, that it was the duty of the treasurer to proceed with the collection of the levy by distress and sale of personal property, and failing this, the sale of real estate in the same manner as if the tax had been levied in 1859, and become delinquent on the 15th of January, 1860.

6. MANDAMUS TO PUBLIC OFFICERS. The respondent to a writ of mandamus cannot escape the performance of a duty or obligation which results from his office, trust, or station, because of a failure to do a precedent act, which would have insured the performance of the whole duty, as commanded by the writ, at the time provided by law.

### *Appeal from Johnson District Court.*

### THURSDAY, OCTOBER, 17.

THE relator appeals from the order of the court below overruling his motion to amend and enlarge the peremptory writ of mandamus to correspond with the judgment, and to issue a new writ, entered at the April Term, 1860. He also appeals from an order made at the June Term, 1860, over-ruling his demurrer to the return of the county treasurer to the said writ. The questions involved sufficiently appear from the opinion.

*J. Grant* for the appellant.

I. An amendment to a writ of mandamus will be allowed in all cases where it will promote justice. Tapp. Mand. 334.

II. The object of the relator by his suit, was to compel obedience in full to the vote of the people, which, when recorded was equivelant to an act of the legislature. By

this vote it was made the duty of the county judge to levy and collect a tax of three mills on a dollar, for a period of ten years from the issue of the bonds. This duty had been continuously neglected for six years. Unpaid interest amounted to over twenty-thousand dollars. It was the duty of the court to compel obedience to the whole act; and any one of the bond-holders has a right to compel obedience to the whole act. *Commonwealth ex rel., Thomas* v. *Commissioners of Alleghany*, 32 Penn. S..R. 218; *The Same ex rel. Hamilton* v. *The Common Council of Pittsburg*, 8 Am. Law Reg. 286.

III. The defendant's duty was to levy and collect a tax of two mills on the dollar, in due season, in 1859, and if the tax was not paid by the 15th of January, 1860, it was the duty of the defendant, Sperry, the collector, to enforce the collection by distress and sale of personal property, after the 15th of January, 1860; (Acts of 1858, page 320, §§ 45–46,) and if not collected in that way, to sell the real property of delinquents; (§ 50.)

The treasurer and other county officers having neglected this duty enjoined on them by act of Assembly, (Code, § 119,) when commanded to levy and collect, by return day of the writ, say, in answer thereto : we have neglected to obey the act this year, and therefore we must have the next year to obey it, and we have so notified the tax payers; we have not levied on personal property ; we don't show that we can find none ; but, says the treasurer, I am sitting at the receipt of customs, and I have told every body that they need not come until next year.

" The court will hear no other return to a peremptory writ of *mandamus*, except à return in the nature of a certificate, alleging that the writ has been complied with ; and such a proceeding is a necessary one, and if not filed, the court will grant an attachment." Tapping on *Mandamus*,

page 408 margin, 445 top, edition 1853. *State* v. *Smith County Judge*, 9 Iowa 590.

As this authority is conclusive, I need not undertake to enlarge an argument on the question.

*Edmonds & Ransom* and *Fairall* for the appellees.

I. The court properly overruled the motion, because it was too general and did not notify the court, in what particular the relator asked an amendment. If the writ is to be regarded in any respect as a pleading, then by all the rules of pleading the party asking an amendment must specifically point out the objection, defect, or discrepency. *The State of Iowa* v. *Maurer*, 7 Iowa 406 ; *Benham* v. *The State of Iowa*, 1 Ib. 542; *Vaughn* v. *The State of Iowa*, 5 Ib. 369.

II. The relator asks the court to amend, or mould the writ to suit the judgment or rule. A court may for the purposes of justice mould the rule for the writ, but can not mould the writ. Tapp. Mand. 337.

III. The writ of mandamus is not the subject of an amendment which would entirely change the command or substance of the writ; for while the court might, perhaps, amend the writ so far as to obviate a merely formal or technical objection (to promote justice,) yet when the proposed amendment seeks to change the substance of the writ, as in the case at bar, the remedy is by motion to stay further proceedings or to quash the writ. Tapp. Mand. 334.

IV. The relator filed an information, asking a writ to compel the defendant to levy a tax, to pay a judgment held by the relator, against the county, upon which an execution had been returned *nulla bona*. He also asks that the writ command the defendants to pay certain coupons held by the relator, upon which he had no judgment. The court ordered the writ to issue, commanding the respondents to levy two mills on the dollar to pay the judgment, but made no order respecting the coupons. The relator may have his suit

against the county on the coupons; and as he has, in contemplation of law a plain, speedy and adequate remedy, he is not entitled to the high prerogative writ of mandamus, which is allowed only when the relator has no other remedy. Tapp. Mand. 18, 20, 31, 23; Code of 1851 § 2182; Morris 31; *The State ex rel. Brackett* v. *The County Judge of Floyd County*, 5 Iowa 380: *Chance* v. *Temple*, 1 Ib. 190.

V. The proposition as submitted and accepted was, " that an annual tax of three mills on the dollar be levied for the payment of the interest annually on said bonds; *Provided*, that the county judge of said county may reduce the said rate in each year, in case the same would yield more than the amount required for such purposes in each year." This proposition contemplates a reduction of the rate, whenever the valuation of property is such as to warrant it.

WRIGHT, J.—I. For many reasons we think the court did not err in overruling the motion to amend the writ.

In the first place, the motion was entirely too general. It does not point out wherein the writ differed from the judgment, to which it is asked to have it correspond. The attention of the court was not by the motion called to any defects or discrepancy, and it might, therefore, be properly disregarded.

In the second place, the writ does correspond with the judgment. It is true that the judgment does not follow what is asked for in the information, nor does the command agree with the matter of inducement set out in the writ. As to these matters, however, there is no complaint. The judgment is, that the proper county officers be required to levy and collect a tax of two mills on the dollar, as shown by the assessment of 1859. The command of the writ follows the judgment literally.

Again, it seems that an alternative writ was issued, to which there was no return, and thereupon the peremptory

writ was ordered. This alternative writ is not in the record. The rule is, that the peremptory writ should conform strictly to the alternative. In other words, the court cannot award a peremptory mandamus in a more limited, or other form, than the alternative. It must go in this form, (except that it omits of course the works requiring the respondent to show cause,) or not at all. [*Chance* v. *Temple*, 1 Iowa, 197; Code, §§ 2184–5; Tapping 305; *Dox* v. *County Judge of Johnson County*, 10 Iowa, 157.] For aught that appears, therefore, there was this necessary agreement. If there was not, then there was error whatever the judgment. If there was (and we are so bound to presume,) there was no more.

But once more; we do not understand the judgment and mandate to differ, or be in conflict with the act of the county, authorizing the issuing of the bonds, and providing for their payment. Under the proposition submitted, as we construe it, a tax not exceeding three mills on the dollar was to be levied for the first ten years, and after that time not exceeding one per centum per annum, on the county valuation. But for any year the county judge could reduce the rate,in the event that the maximum would yield more than sufficient to raise the amount to be paid in such year. The command to levy two mills, instead of three, was not, therefore necessarily in conflict with the terms of the proposition as adopted.

As the record stands, then, we cannot say there was error in overruling the motion.

II. The other part of the case presents questions of more importance and difficulty. In 1853, the county of Johnson voted to issue her bonds and take stock in the "Lyons, Iowa Central Railroad Company," to the amount of fifty thousand dollars, undertaking to pay the same by a tax as hereinbefore stated. (And see *Ring* v. *Johnson County*, 6 Iowa, 265, and *Dox and Whittaker* v. *Same*, 10 Ib., 157 and 161.) It seems that this tax was not levied; nor was the interest on the bonds paid. In May 1859, the relator being the

owner of a judgment, recovered upon some of the interest notes, as well as some of the unpaid coupons filed; his information, after due notice, asking the writ of mandamus, commanding and compelling the proper county officers to levy and collect a tax for the payment of his demands. An alternative writ was issued, at the June Term, 1859, of the Johnson District Court, to which there was no return. Afterwards, at the same term, the peremptory writ was ordered returnable to the next term. This was issued and returned March 19, 1860, and on the same day the county judge, surveyor and treasurer made a return, showing, as they claimed, that they had obeyed its mandate. Such proceedings were had, that the county judge and surveyor were discharged, and an attachment ordered to issue against the treasurer, returnable to the next term. At the return term of this last process, the treasurer made a further answer, to which there was a demurer by plaintiff. The peremptory writ was served February 24th, 1860, and the return of the Board of Equalization (the respondents) shows that on that day they complied with the command of the writ, by levying "a tax of two mills on the dollar on the valuation of property in the county of Johnson, as shown by the assessment roll for the year 1859, for the purpose of paying," &c. It was further stated, that "the county clerk was thereupon ordered to make a duplicate thereof, in order that the same may be collected by the county treasurer, and that so soon as said tax duplicate is completed by said clerk, a warrant will be issued thereon, ordering the said county treasurer to collect the said tax according to law." The further return of the treasurer (filed June 26th, 1860,) states that the books were prepared by the clerk with all possible dispatch, and were then placed in his hands; that the respondent commenced receiving and collecting the tax levied as aforesaid; that he has attended at his office every day since the receipt of said books for the purpose of receiving said tax; that he has given due notice of said levy, and by a cir-

cular (a copy of which he attaches to his answer) urged upon tax-payers the necessity of meeting said levy; that as he is advised he can do nothing further, except to remain in his office to receive said tax, as the same may be tendered by the tax payers, until the 15th of January, 1861, as the same was levied subsequent to January 15th, 1860.

The substantial question made upon the above facts is, whether it was the duty of the treasurer to proceed to collect this tax by the distress and sale of personal property, and failing this, the sale of real estate, in the same manner as if the tax had been levied in 1859, and become delinquent on the 15th of January, 1860; or whether it was his duty to wait until January 15th, 1861, before treating the same as thus delinquent. In our opinion, appellant's position is the correct one, and that the further return of the treasurer did not purge his contempt.

This debt was owing by the county. It was owing and due in 1859, and before that time, as well as after. The duty of the county to pay, to levy and collect a tax for that purpose was as incumbent and obligatory before as after the order of the court compelling the same. This being the plain duty of the officers as the agents of the county, the omission thereof ought not to be allowed to postpone its collection.

Not only so, but by the terms of the contract between the holders of the bonds and the county, the faith of the county was pledged to the levy of a tax to meet the accruing interest, and finally liquidate the entire indebtedness. This duty the county was solemnly obligated to perform, each and every year. Not to levy a tax in 1860 to meet the interest due in 1859, but each year, it was contemplated would bear its own burdens. Good faith to the bond holders, therefore, demanded the levy and no postponement should be allowed because of, as far as shown, an inexcusable neglect of duty in failing to make the same. And while, so

far as the writer of this opinion is concerned, he has never concurred in the view which sustains the power of the counties to issue such bonds, yet he may be permitted to say in this connection, that as long as the power is recognized and upheld, he believes that public policy and good faith alike demand that the indebtedness should be properly and regularly met according to the terms and specifications of the contract. So long as the validity of the bonds is recognized, neither the agents of the counties, nor the courts should countenance any action or proceeding which would tend to militate against the strict and full legal rights of the holders.

Again, it must be remembered that the order of the court and the mandate of the writ was, that the county officers (respondents) should proceed immediately to "levy and collect a tax of two mills on the dollar, on the valuation of property in the county of Johnson, as shown by the assessment roll for the year 1859, for the purpose of paying" &c. It will be seen from this that the mandate was that they should discharge the duty of collecting as well as levying immediately. As a rule, the respondent (the treasurer) could only certify in answer to this writ, that he had complied with or obeyed its requirements. Tapp. on Mandamus, 408; *State* v. *Smith*, 9 Iowa, 334. To this there are exceptions in cases where it has improvidently issued, or has commanded the performance of that which the defendant had no legal right to do. Tapp. 337. The writ, however, did not improvidently issue in this case, nor did it command the performance of an illegal act. And while the command was to immediately levy and collect, we are not to understand, therefore, that the collection was to be made, before the same could be accomplished by the use of legal means. These means are not to "sit at the receipt of customs" to receive the taxes, but those which the law points out when taxes are delinquent.

And finally, the office of this writ is to compel the party addressed to perform a duty which results from his office, trust or station. Code, § 2179. The officer thus addressed should not be allowed to escape this duty or obligation, because of a failure to do that precedent act which would have ensured the ultimate performance of the whole duty, at the time provided by law. And especially is this so, when the relator, as in this case, has been prompt, in invoking the aid of the court in compelling the performance of the duty required.

The order overruling the demurrer is reversed, each party paying half the costs of this appeal.